

**FILED**

**FEBRUARY 3, 2010**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ALBERT CHARLES KUCINSKI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | 2:08-CV-0117 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner ALBERT CHARLES KUCINSKI has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 181st District Court of Randall County, Texas for the offense of manslaughter with a deadly weapon and the resultant ten-year sentence. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that petitioner's federal application for habeas corpus relief be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2004, petitioner was traveling north on a rural road. While going up a steep hill, petitioner attempted to pass a car, despite the double line on the road indicating a no-pass zone. (Reporter's Record (RR), vol. 3., pg. 53). As petitioner was attempting to pass, the other

north-bound vehicle petitioner was passing sped up.  (*Id.*, pg. 51).  The driver of this vehicle

testified that he was going seventy miles per hour, which was the speed limit, and petitioner was

traveling above the speed limit.  (*Id.*, pg. 54).  Unbeknownst to petitioner, there was another

vehicle traveling south coming up the other side of the hill.  (*Id.*).  At the hill's crest, petitioner's

vehicle collided with the south-bound vehicle.  Petitioner was badly injured, and the injuries

sustained by the driver of the other vehicle were fatal.  (*Id.*, pg. 85).  Petitioner was indicted on

manslaughter charges for recklessly causing the death of the other driver while using a deadly

weapon, i.e., a motor vehicle.  (Clerk's Record, pg. 1).

On June 7, 2006, a jury found petitioner guilty of the manslaughter charge and sentenced

him to ten years in prison.  Petitioner appealed the verdict.  After his appellate counsel filed an

*Anders* brief, the appellate court affirmed the judgment.  *Kucinski v. State*, No. 07-06-0235-CR,

2007 WL 778406 (Tex. App.—Amarillo, March 15, 2007, pet. ref'd).  The Texas Court of

Criminal Appeals refused the petition for discretionary review on August 22, 2007.  On February

19, 2008, petitioner filed an application for state habeas corpus relief.  His application was denied

without written order on April 23, 2008.  Petitioner then filed this federal habeas corpus petition.

## II.
## <u>PETITIONER'S ALLEGATIONS</u>

Petitioner appears to contend the respondent is holding him in violation of the Constitution

and laws of the United States the following reasons:

1.   Petitioner received ineffective assistance of counsel at trial.  Petitioner contends
     his trial counsel was ineffective for failing to:

     a.   object to the prosecutor's incorrect statements of petitioner's prior bad acts
          during the punishment phase of trial;

b.      object to the prosecutor's incorrect statements that petitioner was on felony probation until 2009;

c.      object to the prosecutor's introduction of traffic violations that were dismissed;

d.      object to the prosecutor's statements that petitioner had amphetamines in his system before the collision;

e.      investigate petitioner's version of events.

2.      Petitioner's due process rights were violated because the State led the jury to believe petitioner was found guilty of being uninsured at the time of the wreck and of passing in a no-pass zone, when those charges had actually been dismissed.

## III.
## STANDARD OF REVIEW

Petitioner may not obtain federal habeas corpus relief with respect to any claim adjudicated on the merits in the state court proceedings unless the state court adjudication of the claim

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, all factual determinations made by a state court are presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by petitioner.  28 U.S.C. § 2254(e).

The state courts heard and adjudicated, on the merits, the claims petitioner presents federally.  More specifically, the Texas Court of Criminals Appeals denied petitioner's application for state habeas relief without a written order.  A denial without written order is an adjudication

on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000). Consequently, petitioner's burden is significantly heightened and petitioner cannot prevail even if it is shown the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied Neal v. Epps*, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

IV.
<u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Petitioner contends his conviction was obtained in violation of his constitutional right to the effective assistance of counsel. In order to constitute ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Counsel's performance is reviewed from counsel's perspective at the time of trial, not from hindsight. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

The proper standard for judging a petitioner's contention he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland.* Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.* An attorney does not render ineffective assistance by failing to make meritless motions or objections. *Koch v. Puckett*,

907 F.2d 524, 527 (5th Cir. 1990).

It is not enough to merely show deficient performance. A petitioner must also show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, as set forth in *Creel v. Johnson*, 162 F.3d 385 (5th Cir. 1998), to prove prejudice petitioner must show (1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different, and (2) counsel's deficient performance rendered the trial fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*, 113 S.Ct. at 844. A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4. (5th Cir. 1993).

### A. *Prior Convictions - Felony versus Misdemeanor*

Petitioner first contends trial counsel allowed the State to classify prior convictions for possession of a controlled substance and credit card abuse as felonies when they were actually Class A misdemeanors. Petitioner further contends his trial counsel should have objected to evidence of these prior bad acts in any event because such evidence was irrelevant, impermissible character evidence, and impermissible impeachment evidence. (Memo Attached to Original Petition for a Writ of Habeas Corpus by a Person in State Custody [hereinafter Petitioner's Memo], pg. 11).

The record reflects petitioner was indicted on the crime of possession of a controlled substance, i.e. cocaine, in 1995 in cause number 34,699 in Potter County, Texas. While the

indictment is not included in the record of this case, petitioner has attached it as Exhibit B to his

original petition.[1]  This indictment indicates the crime was classified as a state jail felony.

(Petitioner's Memo, Exhibit B).  Petitioner pled guilty to the charges in the indictment and

received deferred adjudication.  (RR vol. 5, State's Exhibit 21).  During his period of deferred

adjudication, petitioner was indicted in cause number 40,214 in Potter County, Texas, on a charge

of credit card abuse.  The indictment indicated the crime was classified as a state jail felony.

(Petitioner's Memo, Exhibit D).  Petitioner pled guilty to the charge, received a two-year

suspended sentence, and was placed on community supervision.  (RR vol. 5, State's Exhibit 22).

The title of the order placing petitioner on community supervision in cause number 40,214 was

"State Jail Felony Order Suspending Imposition of Sentence and Placing Defendant on

Community Supervision."  (*Id.*).

When he pled guilty to credit card abuse, the trial court revoked petitioner's deferred

adjudication in the cocaine possession case (cause number 34,699), sentenced him to two years

incarceration, suspended, and placed him on community supervision.  (RR vol. 5, State's Exhibit

20).  In its Order Suspending Imposition of Sentence and Placing Defendant on Community

Supervision, the trial court stated, "defendant was this day found guilty of the *felony* offense of

possession of a controlled substance by this Court."  (*Id.*) (emphasis added).

In 2001, after violating the conditions of community supervision in both cases, the trial

court assessed 180 days of jail time in each case and extended the community supervision period

---

[1] The Court does not consider the documents attached to petitioner's memorandum that are not also included in the record as evidence in this case.  The evidence on the record is sufficient to independently support the Court's conclusions.  References to any such documents are included in this Report and Recommendation merely to demonstrate that even the documents presented by petitioner belie his assertions.

for an additional five years.  (RR vol. 5, State's Exhibits 19, 23).  Both Orders Extending

Community Supervision stated the offenses were classified as state jail felonies and both orders

specified the trial court had previously found petitioner guilty of "the felony of Possession of a

Controlled Substance" and "the felony of Credit Card Abuse."  (RR vol. 5, State's Exhibits 19,

23).

    While the orders are not included in the record, petitioner has included in his original

petition (and indeed bases his entire argument upon) two additional orders issued in November

2004.  (Petitioner's Memo, Exhibits A, C).  Both orders revoke community supervision based on

petitioner's failure to comply with the conditions of community supervision and impose a

sentence of one year in the Potter County Detention Facility.  (*Id.*).  Both of the orders indicate

the degree of the offense is "Class A Misdemeanor."  (*Id.*).  Both also indicate, however, that the

court had found petitioner guilty of "the felony offense of Possession of a Controlled Substance"

and "the felony offense of Credit Card Abuse."  (*Id.*).  Each further indicates, "the ends of justice

would be served by assessing punishment for a Class A Misdemeanor."  (*Id.*).

    In addition to the multiple instances where the trial court informed petitioner that the

possession offense was a felony, the law in effect at the time he was indicted and pled guilty to

the possession charge established that he had committed a felony.  *See* Act of June 19, 1993, 73rd

Leg., R.S., ch. 900, § 2.01, sec. 481.115(b) (establishing possession of less than one gram of a

penalty group 1 drug as a state jail felony); Act of June 16, 1991, 72d Leg., R.S., ch. 761, § 1, sec.

481.102(3)(D) (establishing cocaine as a penalty group 1 drug) (Petitioner's Memo, Exhibit B)

(indicating petitioner possessed less than one gram of cocaine).  Likewise, the law in effect at the

time petitioner was indicted and pled guilty to the credit card abuse charge classified such as a

felony.  Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 32.31(d) (establishing credit card abuse is a state jail felony).

Petitioner appears to contend that because the 2004 order revoking his community supervision stated the degree of the offense (in both cases) was a Class A misdemeanor, the prosecutor at his trial erred by referring to these prior convictions as felonies.  To the contrary, both of these offenses, as outlined above, were felonies.  When the trial court chose to punish them as Class A misdemeanors in 2004, it stated that it was doing so to serve the ends of justice pursuant to section 12.44(a) of the Texas Penal Code.  (Petitioner's Memo, Exhibits A, C).  This section states,

> A court many punish a defendant *who is convicted of a state jail felony* by imposing the confinement permissible as punishment for a Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice.

TEX. PEN. CODE ANN. § 12.44(a) (Vernon Supp. 2007) (emphasis added).

It was always made clear to the petitioner both in written documents from the trial court and in the laws which petitioner violated that both the cocaine possession and credit card abuse offenses were felonies.  The trial court punished petitioner on both crimes with the explicit understanding that both crimes were, indeed, felonies, but that it was choosing to treat them for punishment purposes only as Class A misdemeanors.  Therefore, when the prosecutor referred to these crimes as felonies, she was correct.  As such, there was no basis for an objection, and petitioner's trial attorney's performance was not deficient for failing to object.  *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984); *Koch*, 904 F.2d at 527.

Petitioner additionally contends evidence of the prior convictions was irrelevant,

impermissible character evidence, and impermissible impeachment evidence.  However, the law in Texas is well-established.  After a finding of guilt, the trial court may allow any evidence relevant to sentencing, "including but not limited to the prior criminal record of the defendant . . . and, notwithstanding [the rules prohibiting the use of character evidence], any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant."  TEX. CRIM. PROC. CODE ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2007).   Therefore, evidence of the prior offenses was not irrelevant and was not impermissible character evidence.  Furthermore, because petitioner did not testify during any stage of the trial, the evidence was not impeachment evidence at all, but was relevant sentencing evidence.  Petitioner's first ground of ineffective assistance of counsel is without merit.

### B.  Felony versus Misdemeanor Probation

Petitioner additionally states the jury was incorrectly told, without objection, that petitioner was on felony probation until 2009, when he had completed his probation (which was for misdemeanor offenses) in 2004.  (Petitioner's Memo, pg. 10).

As outlined above, when petitioner pled guilty to drug possession in 1995 (cause number 34,699), he received five years deferred adjudication.  (RR vol. 5, State's Exhibit 21).  Thus, petitioner was to remain on deferred adjudication until July 2000.  (*Id.*).  One of the conditions of the deferred adjudication was that petitioner not commit any crimes during the five-year period. (*Id.*).  In April 1999 (within the time period of his deferred adjudication), petitioner pled guilty to credit card abuse (cause number 40,214).  (*Id.*, State's Exhibit 22).  The same day he pled guilty to credit card abuse, the court revoked petitioner's deferred adjudication in the possession of a controlled substance case.  (*Id.*, State's Exhibit 20).  In both cause number 34,699 and 40,214, the

trial court sentenced petitioner to two years of incarceration, but suspended imposition of the

sentences and placed petitioner on community supervision for five years in each case. (*Id.*).

Thus, petitioner was to be on community supervision beginning in April 1999 and extending five

years until April 2004 in both cause numbers 34,699 and 40,214.

In 2001, the State moved to revoke petitioner's community supervision in both cause

numbers 34,699 and 40,214 because petitioner failed to meet all the requirements of community

supervision. (*Id.*, State's Exhibit 19). The court sentenced petitioner to 180 days in the county

jail and extended the period of community supervision by another five years in both cases. Thus,

instead of community supervision ending in April 2004, petitioner's community supervision was

to end in April 2009. (*Id.*).

In her rebuttal closing argument during the punishment phase of trial, the prosecutor went

through the various offenses petitioner had been convicted of, part of which is set forth above.

After referring to the credit card abuse charges, the prosecutor stated,

> They gave him another chance, even though he committed another felony. And
> here's where he sustained two felony convictions but given another chance at
> probation, and then something happens along the way and he gets extended five
> years on those cases and that will ultimately result in an expiration date that's yet
> to happen. It's three years from now in 2009.

(RR, vol. 4, pg. 76).

Petitioner was on community supervision (or what the prosecutor referred to as probation)

at the time of the 2004 collision and at the time of the 2006 trial. Furthermore, as discussed in

section IV.A above, both of the crimes for which petitioner was on community supervision were

felonies. Therefore, petitioner is incorrect when he contends the jury was incorrectly told he was

on felony probation until 2009—he, in fact, was on felony probation until 2009. There was no

basis for any objection to the prosecutor's statements, and his trial attorney did not render ineffective assistance by failing to object to such. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Petitioner's second ground of ineffective assistance of counsel is without merit.

### C. Dismissed Charges

In his third ground of error of ineffective assistance of counsel, petitioner contends his attorney failed to personally investigate or object to the State's use of traffic violations that the court had dismissed. At trial, the following took place between the prosecutor and a police officer who was at the scene of the wreck:

> Q.    Okay. Were both drivers insured?
>
> A.    Mr. Soto [the victim] did have a current insurance card. Mr. Kucinski, there wasn't one to be found at the scene.
>
> Q.    Okay. And throughout your investigation, did you ever determine that he was insured?
>
> A.    Never determined that he was insured.
>
> Q.    Okay. Did you ultimately issue a citation to Mr. Kucinski?
>
> A.    Yes.
>
> Q.    And what did you cite him with?
>
> A.    Cited him with pass[ing] in a no passing zone and no insurance.

(RR vol. 3, pg. 194). Petitioner attaches the docket sheet associated with each offense (passing in a no-pass zone and driving without insurance), both of which indicate all charges were dismissed on August 1, 2006. (Petitioner's Memo, Exhibits G, H). Petitioner appears to contend his trial counsel should have requested a continuance to investigate these tickets and should have objected when the prosecutor mentioned them during trial.

As petitioner's exhibits indicate, these two charges were not dismissed until August 1, 2006—almost two full months after the June 2006 trial.  Therefore, when they were mentioned during trial, they were still pending, and there was no basis for any objection.  Petitioner's trial attorney was not deficient in his failure to make a futile objection.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Koch*, 907 F.2d at 527.

Moreover, even if petitioner's attorney's performance was defective, petitioner has not demonstrated how such deficiency prejudiced him.  It is well established in Texas law that "evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial."  *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992); TEX. R. EVID. 404(b).  In this case, petitioner's action of passing in a no-pass zone formed the basis of the State's charge of recklessness and was indivisibly connected to the charged offense.  It was therefore was relevant and admissible. *See Lockhart*, 847 S.W.2d at 571; TEX. PEN. CODE ANN. § 193.04 (Vernon 2003) (defining manslaughter as recklessly causing the death of an individual).  Apart from the officer's testimony about the ticket, the State's first witness testified petitioner was passing in a no-pass zone at the time of the car wreck.  (RR vol. 3, pg. 53).  Petitioner never argues that this testimony, which had the same result as the officer's testimony about petitioner passing in a no-pass zone, was improper.  Overall, there was no basis to object to the officer's statements, and even if there was such a basis, no prejudice resulted from the admission of the testimony.

Moreover, the evidence admitted at trial that petitioner did not have an insurance card on him at the scene and that the officer never definitively determined whether petitioner was insured

was so minimal and non-inflammatory that it was not prejudicial.  Petitioner has  not met the

*Strickland* burden to demonstrate a violation of his constitutional rights.  *See Strickland*, 466 U.S.

at 689, 104 S.Ct. at 2065.  Petitioner's third allegation of ineffective assistance of counsel are

without merit.

### D.  Statements Regarding Amphetamines

Petitioner also contends his trial attorney should have objected to the prosecutor's

statements that the petitioner had amphetamines in his system before the collision.  During the

course of the trial, petitioner's attorney and petitioner himself stipulated to evidence included in

petitioner's medical record.  (RR vol. 5, State's Exhibit 13 - Stipulation of Evidence).  In addition

to detailing the injuries petitioner sustained as a result of the collision, one of the reports created

by the hospital emergency room listed the results of his lab work and stated, "His urine drug

screen is positive for amphetamines and opiates.  We did give him 5 mg of morphine here so I

think that is probably the explanation for the opiates." (*Id.*).  The Discharge Summary Report

contained in the medical records additionally indicated petitioner tested presumptive positive for

amphetamine, but that any amount of amphetamine in petitioner's system was below the range

detected by the test. (*Id.*).  In addition to these medical records, petitioner's attorney offered into

evidence the Department of Public Safety's Crime Laboratory's official report, which stated that

no drugs, including amphetamine, were detected in petitioner's blood.  (RR vol. 5, Defense

Exhibit 5 - DPS Lab Analysis).

These documents were admitted into evidence by stipulation and were used during trial

by both the prosecution and the defense.  The only statements petitioner specifically objects to

in this habeas petition were made by the prosecutor during her closing statements in the

punishment stage of trial. (Petitioner's Memo, pg. 9). Contrary to petitioner's assertion that the

prosecutor stated the use of amphetamines was the cause of the accident, at that point the

prosecutor was merely reviewing petitioner's criminal history (which included a conviction for

possession of cocaine), and she stated,

> And I think it's important to think about, too, you know, obviously we've had a
> drug problem here. I assume most people that possess cocaine have a drug
> problem of some sort, and remember what the hospital records said. Although it
> might have been a trace amount, wasn't enough to show up in the lab, the DPS lab,
> because we could talk about there's a cutoff level. He had amphetamine in his
> system. What is amphetamine? Amphetamine is something like cocaine,
> methamphetamine if you've heard of methamphetamine. It's the same type of
> drug. So I don't see that there has been a big change in Mr. Kucinski's behavior.

(RR vol. 4, pg. 70).

Because the hospital records stipulated to by petitioner were admitted into evidence, the

prosecutor was allowed to make statements reasonably based on documents contained within the

records. There was no basis for any objection, and petitioner's trial attorney did not render

ineffective assistance for not objecting to such statements. *See Koch*, 907 F.2d at 527.

Moreover, even if there were an objection petitioner's attorney could have lodged against

the prosecutor's use of the hospital documents, petitioner has failed to demonstrate how the failure

to make such an objection prejudiced him under the *Strickland* requirements. Even if petitioner's

attorney had objected, there is nothing indicating the result of the trial would have been different,

especially considering the instances when petitioner's attorney directly contradicted the report of

amphetamines with the official DPS report. (RR vol. 3, 211, 234). Furthermore, there is nothing

indicating petitioner did not receive a fair trial because of his attorney's failure to object to the use

of petitioner's medical records.

Considering the one instance contested by petitioner in the instant petition, petitioner fails to demonstrate how his sentence (which was around the middle of the two- to twenty-year range) would have been significantly less harsh had his attorney objected to the statements made by the prosecutor. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Petitioner's fourth contention of ineffective assistance of counsel is without merit.[2] *See Lockhart*, 506 U.S. at 372, 113 S.Ct. at 844.

### *E. Failure to Investigate*

Petitioner's last contention of ineffective assistance of counsel is that his trial attorney was ineffective by failing to investigate his defense theory, which was that a cat inside his vehicle made him veer into the other lane, causing the car wreck. A defense attorney is obligated to make a reasonable investigation into the defendant's version of events. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. Whether counsel upheld this burden is influenced by what the defendant told the attorney and whether the evidence would lead the attorney to investigate further. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1991). A petitioner contending on federal habeas review a violation of his Sixth Amendment rights by his attorney's failure to investigate must allege with specificity what a reasonable investigation would have uncovered and how it would have changed the outcome of the trial. *Miller*, 420 F.3d at 361. A petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

---

[2] Petitioner does not argue his trial attorney erred by allowing the medical records to be admitted without objection. Such an argument would likely have failed, however, considering the probability that admitting the records, which detailed the extent of the injuries petitioner sustained in the wreck was a strategic trial decision. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

In this case, petitioner contends that had his attorney investigated his vehicle, he would have found cat hair and cat food, which would have verified his story. (Petitioner's Memo, pg. 8). Evidence at trial established that no one at the scene saw any indicia of a cat. Quite to the contrary, all of the evidence indicated there was no cat present. An officer who was at the scene of the wreck indicated there were no cats, dead cats, pet carriers, pet food, or other pet care products discovered in petitioner's vehicle at the time of the wreck. (RR vol. 3, pg. 195). Other witnesses likewise testified there were no cats at the scene. (RR vol. 3, pgs. 63, 90, 120).

While petitioner contends his attorney would have discovered cat hair and cat food in the vehicle had he personally inspected the vehicle, petitioner never specifically alleges how such a discovery would have changed the outcome of a trial, as it only would have shown that a cat was present in the vehicle at some point in time, but would not have lent any credence to the contention that it was in the vehicle at the time of the wreck—a theory which was thoroughly disproved at trial by eyewitnesses at the scene. *See Miller*, 420 F.3d at 361. Additionally, because petitioner did not testify at trial, he failed to produce any affirmative evidence of a cat being present in the vehicle at the time of the collision. (RR, vol. 3, pg. 244 (where petitioner stated he waived his right to testify and understood and accepted the consequences of doing so)). Petitioner's final contention of ineffective assistance of counsel is without merit.

## V.
## DUE PROCESS CLAUSE VIOLATIONS

Petitioner additionally contends his due process rights were violated because the State led the jury to believe he was found guilty of being uninsured at the time of the wreck and of passing in a no-pass zone, when those charges had actually been dismissed, in violation of *Napue v.*

*Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (Petitioner's Memo, pg. 11).

*Napue* established that a due process violation occurs when the State knowingly offers false testimony to obtain a conviction and permits that testimony to go uncorrected. *Id.* at 269, 79 S.Ct. at 1177. The Fifth Circuit, in interpreting *Napue* has determined that a new trial may be granted based on such prosecutorial indiscretion only if "(1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material." *Thompson v. Cain*, 161 F.3d 802, 808 (5th Cir. 1998).

Petitioner additionally contends the prosecutor's mention of the traffic citations violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "*Brady* . . . imposes an affirmative duty to disclose to the defense evidence that is both favorable to the accused and material either to guilt or to punishment." *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998), *cert. denied* 526 U.S. 1089 (applying *Brady* to an instance where the prosecution discussed a dismissed charge as if it were pending).

In this case, when the prosecutor solicited testimony from the police officer that he had issued citations to petitioner for passing in a no-pass zone and for driving uninsured, the charges were still pending, and, in fact, were not dismissed until almost two months after the guilty verdict. Therefore, there was no *Napue* violation because, at the time the statements were given, they were accurate. *See Thompson*, 161 F.3d at 808. Furthermore, because the charges were still pending at the time of trial, there was no *Brady* violation. *See Gibbs*, 154 F.3d at 256. Simply put, petitioner has failed to demonstrate that the prosecutor elicited or supported any inaccurate information at trial and has therefore failed to demonstrate any violation of his due process rights. Petitioner's due process claim is without merit.

Having reviewed all of petitioner's grounds of error, the undersigned concludes petitioner has not demonstrated that the state court's decision was unreasonable. *See* 28 U.S.C. § 2254(d)(2). Petitioner has failed to present clear and convincing evidence of the state court's error. *See* 28 U.S.C. § 2254(e). Indeed, some of the documents presented by petitioner, along with the record of the case, belie petitioner's assertions. None of petitioner's contentions are meritorious or entitle him to federal relief.

VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner a ALBERT CHARLES KUCINSKI be DENIED.

VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 3rd day of February, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In

the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).